THE STATE ex rel. GREEN, Executor, v. HENDER-SON, Judge, et al.

In Banc, June 29, 1901.

1. **Appeal: NO BOND: SUPERSEDEAS.** An appeal by the executor without bond from a personal judgment in the circuit court (decreeing the amount due the estate by him at final settlement), does not operate as a supersedeas. And in such case it becomes the duty of the clerk to certify a copy of the circuit court judgment back to the probate court, which then has power to order distribution and execution in accordance therewith, the same as if no appeal had ever been made.

2. **Order of Distribution: NOTICE TO ADMINISTRATOR.** There is no statute prescribing that a notice be given to an executor or administrator that an application for an order of distribution will be made to the probate court for a distribution among the heirs of the money found by the judgment of the court to be on hand at the final settlement. Such order follows the final settlement as a natural consequence and the administrator or executor is still in court for the purposes of the order.

3. **Judgment: PROMISE OF JUDGE TO NOTIFY PARTIES.** A judgment of a court can not be overthrown, because, at the argument, the judge promised to notify the attorneys of one party, that, if he found against him, he would notify them, and afterwards forgot his promise and rendered judgment on the last day of the term in their absence. Such forgetfulness does not affect the judgment.

4. ——: DELAY IN ENTERING. A judgment properly rendered and entered in its proper place on the records as of the day on which rendered, is not invalid because the clerk delayed entering it until after the beginning of the next term of the court. The clerk's acts are ministerial. The judgment is final when pronounced by the court.

5. Writ of Prohibition: RES ADJUDICATA: MERITS OF CAUSE. The Supreme Court, in a proceeding by writ of prohibition to prevent the enforcement by the probate court of an order of distribution against an executor, is limited to questions of jurisdiction of the probate court in the matter, and it will not consider alleged errors in refusing to allow the executor certain credits and charging him with other items, nor will it determine whether a like prohibition case in the circuit court, in which there was a nonsuit, is *res adjudicata* of the matters herein complained of.

*Prohibition.*

WRIT DENIED.

*M. Kinealy, T. J. Rowe* and *Kinealy & Kinealy* for relator.

(1)   The probate court had no jurisdiction to make the order of distribution, because the statutory notice had not been given.   Lilly v. Menke, 126 Mo. 220; In re Grider, 21 Pac. Rep. 523; Timberlake v. Brewer, 29 Ala. 108; Snell v. Rawlings, 3 Humph. (Tenn.) 85.   The court had no jurisdiction to make the order of distribution, because the transcript on appeal, required by section 286, Revised Statutes 1899, had not been certified by the clerk of the circuit court to the probate court.   State ex rel. v. Guinotte, 156 Mo. 519. (2)   The probate court having made the order of distribution without notice to the executor's attorney, and without compliance with the promise to the executor's attorney to give notice, deprived the executor of his day in court, and the order was

unconstitutional, as taking the property of the executor without due process of law, and denying him the equal protection of the law.    Lowrey v. Rainwater, 70 Mo. 157; Rees v. Watertown, 86 Mo. 107; Huber v. Riley, 53 Pa. St. 112; Burton v. Platter, 10 U. S. App. 657; Murray v. Hoboken L. & I. Co., 59 U. S. 270; Kennard v. La., 96 U. S. 480; Stewart v. Palmer, 74 N. Y. 183.    (3)    It is evident that the manner of making record entries and making up the record in the probate court is liable to cause great mistakes, and we submit that the record entries attempted to be made in this case during the term subsequent to that at which the order was claimed to have been made, without any *nunc pro tunc* order, is void. Johnson v. Commonwealth, 80 Ky. 377; Belkin v. Rhodes, 76 Mo. 651; Gibson v. Chouteau, 45 Mo. 173; Bartlett v. Reichenecker, 5 Wash. St. 369; Harvey v. Whitlack, 1 Mont. 713.    (4)    This action was properly made and brought. Sec. 4453, R. S. 1899; 16 Ency. of Pl. and Pr., p. 1, 132; State ex rel. v. Aloe, 152 Mo. 466; People ex rel. v. Fitzgerald, 47 N. Y. Sup. 556; Cosby v. Los Angeles, 110 Cal. 54; In re Rice, 155 U. S. 396.    (5)    Prohibition is a common law remedy.    19 Am. and Eng. Ency. of Law, 264. (6)    The plaintiff has a right to take a nonsuit.    Mayer v. Old, 51 Mo. App. 214; Lawrence v. Shreve, 26 Mo. 492.

*James P. Maginn* and *Wm. F. Woerner* for respondents.

(1)    (a)    If the executor was aggrieved by the order of the probate court, he had an adequate and ordinary remedy by appeal within ten days after the term.    If he did not know the decision had been rendered it was his own fault, for under the circumstances in evidence he ought to have known it.    The facts show that knowledge was brought home to him that the court was about to render judgment.    State ex rel. v. Aloe,

152 Mo. 483; State ex rel. v. Burckhartt, 87 Mo. 533. (b) The action of the circuit court on the application for prohibition before it was in law equivalent to a ruling denying the writ. The instruction being a peremptory one that Green was entitled to the relief he asked for, and being refused, did not entitle the plaintiff to take a nonsuit, with leave to move to set the same aside, after submission of the cause, in an action at law. Plaintiff finding that the court had decided against him, after a week's submission of the cause, seeks to evade the judgment of the circuit court by this device. McLean v. Stuve, 15 Mo. App. 317. There is no warrant for a so-called "nonsuit" in a prohibition case. The plaintiff is not permitted to speculate on getting the writ, and when the court finds against him, to avoid the effect of an adverse decision by withdrawing his petition; hence, plaintiff has no standing by original suit in the Supreme Court. He could under the statute have appealed from the circuit court as in other cases, and that decision is a bar to further original proceedings. R. S. 1899, sec. 4455; Coleman v. Dalton, 71 Mo. App. 14. (c) Prohibition will not be awarded to prevent an execution on a judgment already rendered. It is then too late. (2) The failure of the executor to give a supersedeas bond when he appealed from the personal money judgment against him (finding the balance on his final settlement) rendered by the circuit court, prevented the appeal from suspending the effect of the judgment. R. S. 1899, sec. 809; Branson v. Branson, 102 Mo. 613; Woerner on Administration (2 Ed.), sec. 547, p. 1202. The appellant was not excused from giving bond because he was executor. He did not appeal in the interest of the estate in his representative character, but against the estate's interest from a personal judgment against him, and, hence, was required to give bond like any other person. Sec. 281, R. S. 1899; Woerner on Administration (2 Ed.), sec. 546, p. 1201. (3) The

probate court (after the balance on final settlement had been found and certified down to it by the circuit court), clearly had jurisdiction to make the order of distribution. This order was made after final settlement. On final settlement the statute nowhere requires notice to the executor before the court can make distribution. He is in court at the time, on his own application, and after the final settlement ascertains the amount in his hands, he has no concern with its distribution, or to whom made or how made. Branson v. Branson, 102 Mo. 618. (4) The transcript and original papers sent down by the circuit to the probate court was a sufficient compliance with section 286, Revised Statutes 1899. It filled every substantial requisite and notified and advised the probate court of what had been its rulings so that the latter could "proceed according to the judgment of the circuit court." (5) The judgment is valid and may be appealed from, from the time when rendered, though not written up by the clerk until later. Am. and Eng. Ency. Law, "Judgments" subd. 3, under "Practice in Entering Judgments," in notes.

VALLIANT, J.—This is an original proceeding in which a writ of prohibition is sought against the probate court of the city of St. Louis to prevent the enforcement of an order of distribution against the relator as executor of the will of Patrick J. Burke, deceased.

The petition states that Patrick J. Burke died in St. Louis, leaving a will disposing of real and personal estate, in which the relator was named as executor; that the will was duly probated and relator qualified as executor in the probate court of St. Louis; that at the September term, 1899, relator having previously given the notice required by law, presented his final settlement as executor, in reference to which the court, on the last day of the term, made an order continuing the

matter until next term and thereupon adjourned until court in course; that in the vacation of the court immediately following, the clerk without any authority therefor and without relator's knowledge, entered upon the records of the court what in form was a final judgment, approving the final settlement and a finding that the executor had in his hands $3,530.85 in cash and certain stocks, etc.; that afterwards, December 1, 1899, certain papers were filed in the circuit court which were in form an appeal by one of the legatees in the will from that supposed judgment; and which being duly docketed came on for trial in the circuit court, which trial resulted in a finding and judgment that the executor had in his hands belonging to the estate $6,510.82 in cash, besides the stocks, etc.; that relator filed his motion for a new trial, which was overruled, and took an appeal to this court, where the cause is now pending; that no transcript of the record or proceedings of the circuit court was certified to the probate court, nevertheless, the last-named court on July 14, the last day of its June term, 1900, without notice to relator, rendered a judgment against him directing a distribution of $5,000 among the legatees under the will; that this judgment was not entered on the records by the clerk until the fifth day of September, which was during the following September term; that relator knew nothing of the judgment until the beginning of the September term, when his attention was drawn to it by a notification to his attorney that a motion for execution would be made in behalf of one of the distributees; that was before the judgment had in fact been entered by the clerk; that upon this information relator appeared before the probate court at the opening of the September term, and presented his petition to set aside the order of distribution upon the ground that the court was without jurisdiction, the proceedings in the circuit court not having been certified to the probate court, and relator having had no

notice of the motion for an order of distribution and the order was unjust in that it did not give relator credit for certain amounts that he was entitled to, but the court denied relator's petition, and proceedings to enforce the order of distribution are now impending.

The petition then goes on to state that the relator next applied to the circuit court by petition for a writ of prohibition in like terms as are herein set out, whereupon a rule to show cause having been made, the judge and clerk of the probate court made their return and a trial was had in the circuit court, upon the conclusion of which relator asked an instruction to the effect that he was entitled to a writ of prohibition as prayed, which the court refused, and thereupon relator took a nonsuit with leave, and filed a motion to set the same aside, which the court overruled; that then relator presented a like petition to the St. Louis Court of Appeals which that court refused to entertain upon the ground that it had no jurisdiction because the judge of the probate court was a State officer, then the relator filed this petition in this court.

Respondents in their return deny that the probate court, at the September term, 1899, continued the matter of the final settlement, and aver on the contrary that at that term the relator presented his final settlement as stated, which was examined and considered by the court and approved and the final judgment rendered which was, after the adjournment of the court, entered on the records in due form by the clerk; that when relator took his appeal from the judgment of the circuit court he gave no appeal bond, and therefore that judgment was not superseded; they aver that a copy of the judgment of the circuit court was duly certified to the probate court, and the probate court was lawfully possessed of the case, when it made the order of distribution; deny that relator had no notice

of the application for the order of distribution, and aver that he was present in the probate court by his attorney on the day the motion was heard and resisted the same upon all the grounds he now urges, that the legatees were present by their attorneys and the cause was heard in due form by the court on July 7, 1900, and taken under advisement until July 14, when the judgment was rendered by the court and a memorandum thereof given by the court to the clerk to be entered in the record, and the same was duly entered in the records of the court after its adjournment for the term; they deny the averments of the petition in relation to certain credits which relator claims are due him; aver that relator is insolvent and has given no bond as executor and has maladministered the estate, and they plead the proceedings in the prohibition case in the circuit court as *res adjudicata* of the matter now complained of.

The testimony shows that the executor presented his final settlement to the probate court on the last day of the September term, 1899; that the court examined it, approved it, and passed it as a final settlement, and so informed the executor's attorney, but the attorney misunderstood the court's meaning of the word "passed," and supposed the matter was continued until the next term, but the judge used the word in the sense that the final settlement was approved and allowed, and he made a memorandum to that effect and it was so entered as the judgment of the court. No one of the beneficiaries of the will were present when the final settlement was presented, and hence no exceptions to it were filed, but within ten days they took an appeal to the circuit court and exceptions were there filed and a trial in due form was had, in which both sides took part. At that trial the court disallowed a credit that the probate court had allowed, and charged the executor with interest on the funds, which swelled the amount found against him by the probate court, $3,530.83, to $6,510.82, for which

final judgment in the circuit court was rendered, and from which judgment the executor appealed, but gave no bond. The circuit court ordered that a copy of its judgment be certified to the probate court and that was done in due form by the clerk under the seal of the court, and that certified transcript of that judgment was on file in the probate court when the order of distribution was made. After the judgment of the circuit court had been rendered and a certified copy filed in the probate court, a creditor had notified the executor that on a certain day he would apply to the court for an order on him to pay his allowed claim, and in that connection the attorney for one of the legatees wrote a note to the executor's attorney notifying him that on the same day the creditor applied for his order, a motion for distribution of the estate would be made. That note was received by the attorney of the executor from three to eight days before the motion came up for hearing in the probate court, and it was the only notice the executor had of the proposed motion. But when the motion came up, which was July 7, 1900, the executor's attorney was there and resisted it "on the ground that a proper notice of the application, required by section 269 of the Revised Statutes 1889, had not been given; that the motion should be in writing, when it was oral, and that the probate court had no jurisdiction to entertain the motion for the distribution because no transcript of the record and proceedings, etc., accompanied by the original papers required in section 286 of the Revised Statutes of 1889 had been sent to the probate court." After hearing the arguments the court took the matter under advisement; the attorney for the executor requested the judge to notify him if he should conclude to make an order of distribution, and the judge said he would do so, but afterwards on July 14, the last day of the term, the court without notifying the executor's attorney made the order of distribution now

complained of, and the executor's attorney did not know that it
had been done until a few days before the beginning of the
September term, 1900, when he was notified that an order for
an execution for one of the distributive shares would be ap-
plied for.   Up to that time the order of distribution had not
been entered on the records of the court, although a full
written memorandum thereof was given to the clerk for that
purpose by the judge on the day the order was made.   The
order was not entered by the clerk on the records until after
the beginning of the September term, 1900, and after the mo-
tion by the executor to vacate the order.

The theory of the relator is that the probate court had no
jurisdiction to make the order of distribution' because, first,
there had been no judgment of the probate court on the final
settlement, from which an appeal to the circuit court could
be taken; second, the record and proceedings of the circuit
court had not been certified back to the probate court; third,
the executor was not duly notified of the application for an
order of distribution; fourth, the order was not entered on the
records by the clerk until after the beginning of the next term,
and the judge had failed to notify the executor's attorney of
his conclusion as he had promised to do.

The first ground of objection to the jurisdiction seems to
rest on a misunderstanding by the executor's attorney as to
what occurred in the probate court when the final settlement
was presented.   The court used the word "passed" in refer-
ence to the matter and the counsel interpreted that to mean
continued to the next term.   But what the court in fact did
was to examine, approve and allow the account as presented
and adjudge the balance as therein shown, to be the amount
due the estate on final settlement, and made a memorandum
thereof from which the judgment in due form was entered of
record.   When this final settlement was presented to and con-

sidered by the court, no one interested in the estate except the executor was present or represented, hence, there was no controversy and it was allowed as presented. But the fact coming to the notice of the legatees, an appeal was taken by one of them in due form, and a transcript of the judgment appealed from with the necessary original papers, was lodged in the circuit court. Unquestionably the circuit court, on the face of the record, had jurisdiction of the case. When the trial came on all parties were represented and after a full hearing the circuit court rendered its judgment showing a balance of over $6,000 against the executor, and from that judgment the executor appealed to the Supreme Court, but gave no bond and it being a judgment against him in person the appeal did not operate as a supersedeas. We see no merit in this first point and indeed we do not understand the counsel to seriously now insist on it.

It is, however, contended that the circuit clerk had not certified a transcript of the record and proceedings back to the probate court, and, hence, the court had not become repossessed of the case after the appeal to the circuit court and, therefore, had no jurisdiction of it. When an appeal is taken from a judgment or order of the probate court the statute requires the clerk to send up "a certified transcript of the record and proceedings relating to the case together with the original papers in his office relating thereto." And after a trial *de novo* in the circuit court the clerk of that court "shall certify a transcript of the record and proceedings and the original papers" back to the probate court. In the case at bar, the circuit clerk sent a certified copy of the judgment of the circuit court in the matter, together with the original probate court papers, back to that court, and in the judgment was contained an order directing the clerk to so certify it. We do not see what more literal or substantial compliance with the

statute could have been adopted. The object of the transcript was to inform the probate court what disposition the circuit court had made of the case, and that was shown by the copy of its final judgment in the matter, and if anything ·was needed to indicate to the probate court that the circuit court was done with the case, that was shown by the order of the circuit court directing the clerk to certify the record back. That was in the nature of an order remanding the case.

The relator lays much stress on the point that he was not notified that an application for an order of distribution would be made. In point of fact he was notified through his attorney and was present by his attorney in pursuance of such notice, but he did not get the notice to which his counsel think he was entitled, that is, the notice required by section 243, Revised Statutes 1899, which is as follows: "Each person entitled to distribution or partition, not applying therefor, shall be notified, in writing, of such application ten days before any such order shall be made." It is very plain from its language that that statute has no reference to a notice to be given to an executor; it applies only to persons entitled to a share in the distribution.

There is no statute prescribing a notice to be given to an executor or administrator in such case. When a final settlement has been adjudged, showing a balance in the hands of the executor for distribution, the order of distribution follows as a ·natural consequence. [Branson v. Branson, 102 Mo. 613, 618.] When a balance is thus found to be in his hands for distribution, the executor in contemplation of law is in court for that purpose until the order is made. Of course, the court would not suffer an unfair advantage to be taken of his accidental absence, but the law prescribes no notice for him, and the order may be made in his absence if the court sees fit to do so. But there is no ground for complaint of that kind in

this case, because this executor was notified and was present and urged all the reasons why the order should not be made that he now urges against its validity.

When the motion was heard and taken under advisement the judge, at the request of the executor's attorney, promised to notify him if he should conclude to make the order, but afterwards made it on the last day of the term, July 14, 1900, and forgot to notify the counsel as promised, and in consequence the counsel did not know the order had been made until about the first of September, when he was notified that a motion for execution would be presented. It is unfortunate for the relator if he has suffered a disadvantage by the omission of the judge to give him the promised notice, but that fact does not affect the validity of the judgment, certainly not the jurisdiction of the court. It would be an exceedingly dangerous practice to allow judgments of record to be upset for such reasons. [Jones v. Hart, 60 Mo. 351.]

The last point advanced is that the judgment though rendered July 14, the last day of the June term, was not actually written in the records by the clerk until after the beginning of the September term. It was not entered as of the proceedings of the September term, but as of the proceedings of the June term. It was not a *nunc pro tunc* entry, but was simply a judgment which the clerk delayed entering, but when entered, appeared in its proper place in the court records, and as of the day of its rendition. There is nothing in that fact to render the judgment invalid. [Gibbs v. Southern, 116 Mo. 204.] "A judgment is the final determination of the right of the parties to the action." [R. S. 1899, sec. 766.] A judgment is the act of the court; its entry in the record is the act of the clerk; the one is judicial, the other is ministerial; the one is the determining act, the other is the evidence of it. A judgment of a court of record can be proven only by the record, yet

it derives its force, not from its entry on the record, but from its rendition by the court.

This subject is well considered in 18 Ency. Pl. and Pr., from which we make the following quotations: "The act, after the trial and final submission of a case, of pronouncing judgment in language which fully determines the rights of the parties to the action and leaves nothing more to be done except the entry of the judgment by the clerk, constitutes the rendition of a judgment." [P. 429.] "The decisions of all courts must be preserved in writing in some record provided for that purpose. The reason for this does not lie in the fact that the entry is necessary to the completion of the judgment, for a judgment is as final when pronounced by the court as when entered and recorded by the clerk, and an entire failure to make up the record will not necessarily affect the parties interested." [PP. 437-8.] "Since, as has been seen, the act of the clerk in entering a judgment upon a record is purely ministerial, a judgment properly rendered may be entered by the clerk in vacation." [P. 446.] In the case at bar, the validity of the judgment was not affected by the delay of the clerk in entering it in the court record.

As to the alleged erroneous acts of the circuit court in refusing to allow the relator certain credits and charging him with other items, they can not be inquired into in this proceeding. Nor can we pass on the merits of respondents' plea of *res adjudicata*. Our attention is limited to questions affecting the jurisdiction of the probate court in the matter of the order of distribution complained of. We are of the opinion that the probate court has not exceeded its jurisdiction, and the writ of prohibition is therefore denied.

All concur.