**Karen Leora LACHER, Petitioner–Respondent,**

v.

**Gary Neil LACHER, Respondent–Appellant.**

No. 72181.

Supreme Court of Missouri, En Banc.

March 13, 1990.

Joan M. Burger, St. Louis, for respondent-appellant.

Robert F. Summers, Terri Burke, St. Louis, for petitioner-respondent.

ROBERTSON, Judge.

In this case we are asked to decide whether a decree of dissolution of marriage that disposes of all issues and property before the trial court but which expressly purports to maintain jurisdiction in the trial court for a period of time exceeding that established by Rule 75.01 is nonetheless final, appealable, and exclusively modifiable by a Section 452.370, RSMo 1986, motion to modify. The Court of Appeals, Eastern District, held that the decree in question was final on the date it was entered, could be modified only by the filing of a motion to modify pursuant to Section 452.370, and dismissed the appeal. Noting a conflict between cases holding that a judgment in a dissolution of marriage ac-

tion becomes final thirty days after entry, see *State ex rel. McClintock v. Black*, 608 S.W.2d 405 (Mo. banc 1980), and *In re Marriage of Wilfong*, 658 S.W.2d 45 (Mo. App.1983), and cases holding that an otherwise final decree of dissolution held open to determine the outcome of a contingency is not final, see *Haldeman v. Haldeman*, 685 S.W.2d 570 (Mo.App.1984) and *Dorris v. Dorris*, 623 S.W.2d 47 (Mo.App.1981), the court of appeals transferred the case to this court pursuant to Rule 83.02. We have jurisdiction. Mo. Const. art. V, § 10. We hold that the decree of dissolution in this case became final thirty days after its entry. The trial court was therefore without jurisdiction to proceed in the absence of the filing of a motion to modify pursuant to Section 452.370. The appeal is dismissed.

## I.

The Circuit Court of St. Louis County dissolved the marriage of Karen Leora Lacher and Gary Neil Lacher on April 28, 1988. The decree of dissolution divided the property of the marriage, awarded custody of the minor children to Karen, provided visitation rights for Gary and required that Gary pay child support of $356.66 per month per child and $430.00 per month as contractual maintenance to Karen for three years, all as set out in the separation agreement executed by Karen and Gary. The decree also purported to retain jurisdiction in the trial court for six months "over the issues of the amount of child support and maintenance ... for the reason the respondent is currently unemployed."

On August 17, 1988, Gary filed a "Motion to Reconsider and Reduce the Amount of Child Support and Maintenance" because he was still unemployed. On December 5, 1988, more than seven months after the entry of its judgment of dissolution, the trial court entered its order denying Gary's motion to reconsider, but granted a "six-month moratorium as to monthly maintenance payments" payable to Karen. Gary appealed.

## II.

### A.

In *Haldeman v. Haldeman*, 685 S.W.2d 570 (Mo.App.1984), the husband married his wife, a Spanish national, in Spain, where Mr. and Mrs. Haldeman resided. The union produced two children. Without the wife's consent, the husband removed the children from the Spanish marital home to the United States. The husband sought to dissolve the marriage in Missouri where the children then lived with their paternal grandmother. The trial court entered a decree dissolving the marriage and purporting to award the wife primary custody of the children although she did not reside in the United States. The decree ordered the husband to transfer physical custody of the children to the wife immediately upon her permanent relocation in the United States. Both the husband and the wife appealed.

The Court of Appeals, Eastern District, held that the decree of dissolution was not final and dismissed the appeal. The court acknowledged that the effect of the decree was to allow the children to remain in the custody of the husband's mother, but rejected the husband's argument that the decree must be read to award him primary custody. The court reasoned that the decree was not final because the final determination of custody was conditioned on the occurrence of a future contingency. "[T]o the extent that the decree allows the children to remain in the custody of their grandmother, it is a decree of temporary custody, which is not appealable." *Id.* at 571.

In *Dorris v. Dorris*, 623 S.W.2d 47 (Mo. App.1981), the marriage of the parties was dissolved on September 24, 1979. The decree of dissolution awarded custody of the minor child of the marriage to the husband. Subsequently, the wife filed a motion to modify the decree, alleging a change of circumstances and asking that custody of the child be awarded to her. The trial court found a change of circumstances and entered an order granting the wife custody of the child. However, the court ordered both parties "to return to this Court for a further decision as to the custody of said child" three years after the entry of the

order sustaining the motion to modify. The Court of Appeals, Eastern District, held that the order of modification was not final and dismissed the husband's appeal.

In *In re Marriage of Wilfong*, 658 S.W.2d 45 (Mo.App.1983), the Court of Appeals, Western District, held that a decree that "fully determines the rights of the parties to the action constitutes the rendition of the judgment." *Id.* at 47. Similarly, in *State ex rel. McClintock v. Black*, 608 S.W.2d 405 (Mo. banc 1980), this Court overruled cases holding that where a court fails to set off all marital property, the judgment of the trial court is not appealable. Instead, this Court held that a decree of dissolution that disposes of all the property before the court is final, even though it is subsequently discovered that some marital property was not before the court when it rendered its decision.

### B.

The conflict between the cases is not facially apparent. The decisions agree on the general rule that only a final judgment is appealable. Nevertheless, the conflict exists, is indirect and arises as a result of Court of Appeals, Eastern District, decisions holding that the existence of contingencies in otherwise final decrees of dissolution destroys the finality of those decrees and renders them unappealable.

Dissolutions of marriage regularly force trial courts to make choices concerning the custody and support of children. Such choices often must be made knowing that circumstances will change, but without any assurance as to how changed circumstances will impact the best interests of the children. In an attempt to accommodate uncertainty, some courts have fashioned orders that attempt to take into account future contingencies. These decrees have ordered a change in custody upon the occurrence of a specified event, *Haldeman*, have required reappearance before the court after the expiration of a specified time as a means for the court to consider the efficacy of its custody plan, *Dorris*, and have left custody open pending the outcome of employment decisions by one or both of the parties, *In re Marriage of Michalski*, 542 S.W.2d 96, 99 (Mo.App. 1976).[1]

The motivation behind such creativity is commendable; it bespeaks genuine concern for the children involved. Unfortunately, that motivation tempts courts to assume that the judgment in a dissolution of marriage action is of a different species than a judgment in other civil cases and that the Rules of Civil Procedure are not strictly applicable. The assumption is, however, incorrect.

The judgment in a dissolution of marriage action is no different than a judgment in any civil action. In order to be a final judgment, subject to appeal, a judgment must fully determine the rights of the parties to the action. *State ex rel. Green v. Henderson*, 164 Mo. 347, 64 S.W. 138, 141 (banc 1901).

> An essential requirement of a judgment is that it be sufficiently certain in its terms to be susceptible of enforcement in the manner provided by law. To comply with this requirement, the judgment must adjudicate the controversy to a conclusion which permits issuance and processing of an execution without external proof or another hearing.

*Ravenscroft v. Ravenscroft*, 585 S.W.2d 270, 273 (Mo.App.1979).

Pursuant to Rule 75.01, the trial court retains jurisdiction for thirty days following the entry of its judgment to take corrective action. In the absence of a motion for new trial filed pursuant to Rule 78.04, the trial court loses jurisdiction at the expiration of thirty days. "We know of no lawful method which would authorize the trial court to 'hold in abeyance' the judgment which had become final." *Camden v. St. Louis Public Service Co.*, 239 Mo.App. 1199, 206 S.W.2d 699, 703 (1947).

---

**1.** The decree in *Michalski* did not decide the issue of child custody. The court of appeals correctly held that it was not final.

### C.

Against these clear rules relating to judgments, we now consider the decree of dissolution entered here. The decree in this case no doubt arises from the same well-meaning concerns that prompted the decrees in *Haldeman, Dorris* and *Michalski*. The decree divides all of the property of the marriage, awards custody of the children and establishes a visitation schedule, makes a specific and enforceable award of support and provides for a specific and enforceable maintenance payment, each payable by Gary.

In sum, the controversy is adjudicated to its conclusion and execution may issue in the event of the failure of either party to perform the obligations imposed by the decree. In our view, the judgment of the trial court entered April 28, 1988, is final and appealable; there is nothing left to adjudicate. The trial court's attempt to retain jurisdiction over this final decree is contrary to Rule 75.01 and is without effect. The trial court lost jurisdiction over this action thirty days after it entered its decree of dissolution.

Given the finality of the trial court's judgment, that court had no jurisdiction to consider Gary's "Motion to Reconsider and Reduce the Amount of Child Support and Maintenance." A motion to modify under Section 452.370 is required to bring questions relating to changes in child support and maintenance issues under the court's jurisdiction. Because the trial court lacked jurisdiction to consider Gary's motion, the appeal must be dismissed.

### III.

Appellant's appeal is dismissed.

HIGGINS, COVINGTON, BILLINGS and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., dissents in separate opinion filed.

RENDLEN, J., dissents and concurs in dissenting opinion of BLACKMAR, C.J.

BLACKMAR, Chief Justice, dissenting.

I dissent because I do not believe that the trial courts should set traps for litigants, or that appellate courts should spring the traps.

The decree of April 28, 1988 made it clear to the defendant-appellant that the trial court would hear him within six months "over the issues of the amount of child support and maintenance...." The defendant and his counsel had every reason to believe that there was no decree in the case which was then final and appealable, and some of the cases considered by the court would support this assumption. It is clear that, had the defendant filed a notice of appeal, the entire case would have been transferred from the trial court to the court of appeals, so that the trial court would have lacked the power to act within the reservation of jurisdiction.

Now we tell the defendant that his appeal has been barred. I have no quarrel with the holding that the reservation of jurisdiction was invalid, insofar as this establishes a rule for future guidance. But the effect of the holding is to deny this defendant the right to appeal. The trial court compounded the problem because it held the motion for reconsideration under advisement from August 17, 1988 until December 5, 1988, thereby depriving the defendant of the opportunity to seek leave to appeal by special order as authorized by Rule 81.07(a). The time for such an application expired late in November of 1988.

Because of the confusion of the law I would place the burden on the plaintiff to seek relief by writ against the invalid retention of jurisdiction, rather than surprising the defendant with the news that he has lost his right of appeal by assuming that the trial judge was aware of his powers. I would rule the merits of the appeal, or retransfer the case to the court of appeals for this purpose.